

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00272-CV

———————————————

IN RE: THE COMMITMENT OF TERRY LEE BORN

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. D213-S-13902-18

Before Gabriel, Kerr, and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Terry Lee Born appeals from a final judgment of civil commitment. In his first two issues, he challenges the legal and factual sufficiency of the evidence to support the jury's implied determination that he has a behavioral abnormality which makes him likely to reoffend. We hold that the evidence is legally and factually sufficient to support the jury's finding that Born suffers from a behavioral abnormality. In his third issue, Born argues that the State's expert applied an incorrect definition of behavioral abnormality during his evaluation. We overrule Born's third issue because the State's expert used the correct definition of behavioral abnormality. In his fourth issue, Born argues that the trial court erroneously commented on the weight of the evidence. We overrule Born's fourth issue because he did not demonstrate that the trial court's alleged improper comments were incurable. In his last two issues, Born challenges certain evidentiary matters. We hold that these challenges are without merit.

## I. BACKGROUND

In June 2018, the State filed a petition to civilly commit Born as a sexually violent predator. Born's criminal sentence discharge date is not until August 5, 2037; however, Born's admission into the Texas Department of Criminal Justice's (TDCJ) sex-offender-treatment program was pending, and his participation in the program could result in early release from prison. The State alleged that on September 23, 1997, Born had been convicted of two sexually violent offenses; aggravated sexual

assault of a child under fourteen years of age. According to the State, the first offense occurred in May 1995 and the second occurred in January 1997. The State further stated that its expert had determined that Born suffers from a behavioral abnormality in accordance with Section 841.023(a) of the Health and Safety Code. The State asked the trier of fact to find that Born is a sexually violent predator and to civilly commit him under the sexually violent predator statute. *See* Tex. Health & Safety Code Ann. §§ 841.001–.153.

Two witnesses testified at the jury trial: the State's expert, Dr. Stephen Thorne, and Born himself. Thorne opined that Born has a behavioral abnormality. Thorne based his opinion on Born's risk factors for reoffending, his criminal history, the information he received from Born's sex-offender-treatment provider, and the two psychological tests that he administered to Born. For his part, Born testified that he will need sex-offender treatment for the rest of his life to ensure that he does not "hurt anyone else again."

The jury found beyond a reasonable doubt that Born is a sexually violent predator. The trial court ordered Born committed until he was no longer likely to engage in predatory acts. This appeal followed.

## II. WITNESS TESTIMONY

### A. Thorne's testimony

The State's expert, Stephen Thorne, testified that he is a licensed psychologist who practices primarily in the area of forensic psychology. Thorne described his

3

qualifications to handle civil-commitment cases, including his educational background, his professional license in psychology, and his specialized training in forensic psychology.[1] Thorne testified that he had been performing these types of civil-commitment evaluations for about thirteen years and estimated that he had performed about 250 of them. Thorne explained that many different agencies had retained him to conduct civil-commitment evaluations including the Texas Department of Corrections, the State Counsel for Offenders, the Special Prosecution Unit, and the Texas Civil Commitment Office, as well as several private defense attorneys.

According to Thorne, there is not a behavioral abnormality test available that would allow him to simply plug in information about Born to determine whether he suffers from a behavioral abnormality. Instead, when Thorne conducts a civil-commitment evaluation, he employs a clinically adjusted actuarial approach. Essentially, Thorne reviews an individual's pertinent records, conducts an interview with the individual, and uses testing instruments to form his opinion. According to Thorne, this methodology is in accordance with his training as a forensic psychologist

---

[1]Thorne testified that he has a Ph.D. in clinical psychology from the University of Texas Southwestern Medical Center at Dallas and a bachelor's degree in psychology from Austin College in Sherman, Texas. Thorne further stated that he has been licensed in Texas for approximately sixteen years. Finally, Thorne testified that throughout his career, he has continued to receive specialized training in the field of forensic psychology. The trial court also admitted Thorne's curriculum vitae that described his professional and educational background.

and is in accordance with the accepted standards in the field of forensic psychology. Further, Thorne stated that the methodology he employs is also used by other experts performing behavioral-abnormality evaluations.

As it relates to his evaluation of Born, Thorne reviewed Born's offense reports, as well as reports describing Born's educational background, work history, sexual history, criminal history, and psychological history. Thorne also reviewed the deposition that Born gave for purposes of this litigation. Thorne testified that these are the same types of records normally reviewed by experts when conducting behavioral-abnormality evaluations. Thorne explained that reviewing such a wide range of records gives him the best sense of the person that he is evaluating. Additionally, Thorne stated that his two-hour face-to-face interview with Born was conducted in accordance with his training as a psychologist and in accordance with accepted standards in the field of psychology.

After reviewing Born's records, Thorne examined Born's risk and protective factors. Thorne explained that risk factors and protective factors, in isolation, might either increase or decrease a person's risk for future sexual offending. Thorne stated that two risk factors best predict an individual's likelihood of reoffending. The first is a person's history of sexual deviancy—that is, his history of committing acts that violate the rights, safety, health, or well-being of another person. The second is a person's history of antisocial behavior—that is, a history of the person's behavior that is in violation of the law or that is impulsive or careless. In Thorne's view, evidence

of Born's deviant sexual interest and antisocial behavior was found in his history of criminal sexual offenses.

Thorne recalled that Born's first victim was a young male relative who lived with him and was five or six years old at the time of the offense. Thorne relayed that Born touched the boy's anus and genitalia, gave and received oral sex from the boy, and penetrated the boy's anus with his penis. On one occasion Born placed a pillow over the boy's face and sat on him while sexually assaulting him. Thorne stated that Born knew the boy was in pain and was crying during that assault. In order to "make him feel better about things," Born would often take the boy to get ice cream after he sexually assaulted him.

Born subsequently pleaded guilty to giving and receiving oral sex to and from the boy and to anally penetrating him. As a result, Born was placed on deferred adjudication probation for ten years. Born was ordered to participate in a sex-offender-treatment program as a condition of his deferred adjudication probation.

Thorne identified several risk factors for reoffending from the facts of Born's first conviction. The first was the fact that Born victimized a child that he is related to and lived with, using force. Thorne stated that sexually assaulting a known child by force is a sign of sexual deviancy. Next, Thorne pointed to Born's grooming of his victim by giving him ice cream after the sexual assaults. According to Thorne, grooming shows manipulation and intentional behavior and demonstrates that Born's actions were not spontaneous but well thought out and planned. Another lesser risk

6

factor was Born's initial denial of his acts of oral sex and anal penetration. Thorne expressed concern that Born's denial raised questions as to whether he had taken responsibility for his actions.[2] Further, Thorne testified that the fact that Born was drinking at the time that he sexually assaulted the boy was also a risk factor. Finally, according to Thorne, the "brazen" act of sexually assaulting his victim while another person was in the home was relevant to Born's evaluation as a potential reoffender.

Thorne also recounted the facts surrounding Born's second conviction for sexual assault. Thorne testified that within two years of sexually assaulting his first young male victim, and while under the supervision of probation and attending weekly sex-offender-treatment sessions, Born reoffended against another young boy, who lived in the same house—his stepson, who was eight or nine years old at the time. Thorne recalled that on forty occasions, Born performed oral sex on his stepson in the early morning hours when he thought that the boy was asleep. After his stepson made an outcry, Born pleaded guilty to aggravated sexual assault of a child under the age of fourteen and received a forty-year prison sentence. Consequently, Born's probation was revoked, and he received a second forty-year prison sentence to run concurrent with the forty-year sentence he received in his stepson's case.

---

[2]It should be noted that Thorne testified that while accepting responsibility has not been shown to be related to how likely someone is to sexually reoffend in the future, it is relevant to the issue of whether a person successfully completed sex-offender treatment. However, Thorne testified that even if Born fully took responsibility for his sexual assaults, such an admission would not mean that Born no longer suffers from a behavioral abnormality.

Thorne testified that this offense showed the number one statistically significant risk factor: reoffending after punishment for a prior sexual offense. As Thorne pointed out, Born sexually assaulted his stepson even as he was being monitored as a sex offender and while he was receiving weekly sex-offender-treatment sessions. Thorne referred to this risk factor as "persistence after punishment," meaning that a sex offender persists in offending even after he has been punished for his initial documented sex offense. Thorne testified that most sex offenders who are caught and punished do not continue to reoffend. Accordingly, if one does reoffend after punishment, there is a significant risk that the person will reoffend yet again.[3] Additionally, Thorne testified that research shows that male sex offenders who select young male victims are more likely to reoffend.

As for "protective factors" that might reduce Born's risk of reoffending, Thorne found few in Born's case. Among them were his then-current age, which was in the typical range of declining sexual recidivism; his ability to maintain employment; he did not qualify as a psychopath; the fact that he did not sexually assault strangers; and the fact that he does not have a wide-ranging history of nonsexual arrests or convictions.

---

[3]Thorne explained that reoffending after punishment could indicate a number of things including that the sex offender's treatment was unsuccessful, that the reoffender exhibited poor judgment in regard to his risk factors (i.e., he put himself in an environment where he would reoffend such as living in a home with children), or that the reoffender knew what his risk factors were but ignored them and chose to be in the vicinity of his preferred victims.

However, Thorne went on to explain that some of the theoretically protective factors did not in reality reduce Born's risk to reoffend. For example, having social support is a protective factor. Yet Born committed sex offenses even though he had the social support of his family and friends.[4] Additionally, maintaining stable employment is in theory a protective factor. However, Born had a stable job and was doing well when he sexually assaulted the two young boys. Finally, living with a lover for at least two years is deemed to be a protective factor. Yet Born sexually assaulted the two young boys during the time that he was living with each of his respective wives for over two years.

Additionally, as part of his evaluation of Born, Thorne administered and scored two tests: the PCL-R and the Static-99R. Thorne explained that, standing alone, neither test can determine if a person suffers from a behavioral abnormality. But the test results did provide additional information that assisted him in his evaluation.

The PCL-R test measures the degree to which a person is a psychopath. Thorne stated that Born scored a fifteen on the PCL-R test, which ranges from zero to forty. According to Thorne, Born's low score did not indicate that he was a psychopath. However, both Thorne and Born's treatment provider in prison believed that Born possesses some psychopathic traits such as a lack of empathy and remorse.

---

[4]Born testified that when he is released from prison, he will have no support from any family or friends.

9

Thorne testified that the Static-99R test is used to assess whether a sex offender is likely to reoffend. Born scored a one on this test indicating that he has an average risk of reoffending. However, Thorne suggested that the actual risk of reoffending might be higher than that reflected on the test because the test does not account for certain facts such as Born's sexual assault of his stepson on forty occasions, his grooming of victims, his use of physical force on victims, and his denial and minimization of his offenses.

Finally, although Thorne was not required to diagnose Born with a medical or psychological condition as a result of his evaluation of Born, he diagnosed Born with pedophilic disorder. Thorne explained that a pedophile is an adult who is attracted to prepubescent children. Thorne's diagnosis was based on the fact that both of Born's victims were prepubescent and the fact that Born admitted to having thoughts of sexually assaulting one of the boys for a year before he assaulted him. Thorne testified that pedophilic disorder is a chronic condition that can affect a person's emotional or volitional capacity. Thorne testified that he believed that Born's pedophilic disorder caused him to have serious difficulty in controlling his behavior.

Ultimately, based on his education, training, experience, and the methodology used, which included a review of Born's pertinent records and test scores, his diagnosis of Born as a pedophile, and his interview with Born, Thorne believed that Born suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

During cross-examination, Born elicited various facts to show that Thorne lacked the experience to conduct this type of evaluation.[5] Born further attacked Thorne's evaluation on various fronts. For instance, Born led Thorne to testify that a score of one on the Static-99R test correlates to less than a 1% chance of reoffending in the future. Born also pointed out that although having an antisocial disorder is indicative of a risk to reoffend, Thorne did not diagnose him as suffering from an antisocial personality disorder.

Born also spent part of his cross-examination attempting to establish that his deferred adjudication probation was not punishment sufficient to deter him from reoffending, i.e., that being on deferred adjudication probation is not really punishment but that serving time in prison is punishment. However, Thorne testified that there is no research demonstrating that "incarceration is a protective factor against future sexual recidivism."

## B. Born's testimony

After Thorne testified, the State called Born as an adverse witness. Born admitted that he sexually assaulted both his stepson and his young male relative. Born stated that he sexually assaulted his seven-year-old relative on three or four occasions by performing oral and anal sex on him. Born also stated that he fondled the boy's

---

[5]For instance, Thorne acknowledged that he does not have a medical degree, is not a psychiatrist, has not completed any course work covering the subject of behavioral abnormalities, is not a board certified psychologist, and has never performed any kind of sex-offender treatment in his practice.

11

anus and penis, made the boy perform oral sex on him, and masturbated in front of the boy. Further, Born admitted that on one occasion he forced the boy to the floor and held his arms down so that he could penetrate the boy's anus. Born stated that the boy struggled and cried when he sexually assaulted him. This excited Born and caused him to ejaculate. Born testified that using force on the boy gave him a feeling of power and control. After assaulting the boy, Born felt remorseful, but after those feelings faded, he would sexually assault the boy again. Born gave the boy ice cream after the sexual assaults in order to tame his guilt and to manipulate the boy. When asked why he had sexually assaulted the young boy, Born stated that at the time he was fantasizing about having sex with men but could not "come to grips with [his] homosexuality," so he looked for an "out."

Born also testified about his sexual assault of his stepson. According to Born, his stepson was five years old when he began performing oral sex on the boy as he slept. Born estimated that he sexually assaulted his stepson on thirty-five to forty occasions. Born stated that he sexually assaulted the boy because doing so gave him feelings of power and control that aroused him. During this period of time, Born was under the State's supervision and was receiving weekly treatment as a sex offender.

Born stated that he had thought about sexually assaulting his stepson for about a year before he started performing oral sex on the boy. Born said that during that year, he was thinking about his "hidden homosexuality." Born told the jury that his "sex addiction" and his "wrong thinking" caused him to sexually assault his stepson.

12

He testified that he is not cured of his addiction because there is no cure. In his deposition, taken a month before the jury trial, Born stated that he had been a "good" stepfather.

Born also testified about the sex-offender-treatment program he had recently completed in prison. Born stated that as a result of the program, he had learned what his "triggers" are as they relate to committing sex offenses. Even though Born testified that he is a homosexual who is attracted to men, Born stated that his triggers are alcohol, pornography, and children. Born admitted that he was sexually attracted to young boys when he assaulted his two victims. Born attributed his sexual offenses to a disease that can never be cured. He stated that he will always need sex-offender treatment in order to ensure that he does not "hurt anyone else again." Born testified that there is always a risk that he will sexually assault another child in the future. Finally, Born stated that he used to be a pedophile, but that he is not one now.

On cross-examination by his own counsel, Born testified about his past including the fact that he was sexually assaulted by a male cousin when he was twelve years old. Born further testified that probation is very different from prison and that he had no intention of doing anything that would cause him to have to return to prison. Born recited the various jobs that he held while in prison as well as the good behavior he exhibited in prison over the last twenty-two years.

Additionally, Born adamantly denied ever being a part of any type of gang. Upon his release, Born planned to "do what parole tells [him] to do" and to find a

13

suitable job. Finally, Born stated that he planned to abstain from sex upon his release, even though his therapist believed that this plan was "unrealistic."

## III. SUFFICIENCY OF THE EVIDENCE

In his first two issues, Born argues that the evidence is legally and factually insufficient to support the jury's conclusion that he is a sexually violent predator who suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

### A. Legal sufficiency

In his first issue, Born argues that the evidence is legally insufficient to support the jury's verdict that he is a sexually violent predator. Born offers numerous conclusory statements to support his claim; we will discuss each one in turn.

We review sexually violent predator civil-commitment proceedings for legal sufficiency of the evidence using the appellate standard of review applied in criminal cases. *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *Id.*

To have an offender civilly committed, the State must show beyond a reasonable doubt that "the person . . . (1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *See* Tex. Health & Safety Code Ann. §§ 841.003(a),

14

.062(a). The statute defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

As to the first prong, it is undisputed that Born is a repeat sexually violent offender because he has more than one conviction for a sexually violent offense. *See id.* §§ 841.002(8), .003(b). Moreover, Born does not challenge this finding.

As to the second prong, Born starts by arguing that Thorne's opinion that he has a "behavioral abnormality" is based on an incorrect legal definition of this term.[6] Born claims that under the correct legal definition of the term "behavioral abnormality," only those sexual predators who are "extremely dangerous" or are the "worst of the worst" can be found to suffer from a behavioral abnormality. However, these phrases do not appear in the statute and are not elements that the State was required to prove. *In re Commitment of Johnson*, No. 05-17-01171-CV, 2019 WL 364475, at *3 (Tex. App.—Dallas Jan. 30, 2019, no pet.) (mem. op.) (holding terms "extremely dangerous" and "worst of the worst" do not appear in statutory sexually violent predator definition; thus, terms are not elements State had to prove); *see In re Commitment of Bohannan*, 388 S.W.3d 296, 302–03 (Tex. 2012). Rather, the State was required to prove that Born had a behavioral abnormality—that is, a congenital or

---

[6]This is also the basis of Born's argument in his third issue.

15

acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person. Tex. Health & Safety Code Ann. § 841.003(a). Here, Thorne relied upon the proper and statutorily correct definition of behavioral abnormality in his evaluation of Born and subsequent conclusion that Born suffers from a behavioral abnormality.[7]

Additionally, Born argues that the "persistence after punishment" risk factor should not be considered in his case because he was on probation when he assaulted his second victim, and probation cannot be considered "punishment." Born cites no legal authority to support this conclusory statement. Moreover, the law is contrary to Born's claim. *See Shortt v. State*, 539 S.W.3d 321, 325 n.6 (Tex. Crim. App. 2018) ("[T]he prevailing weight of decisional authority in our state suggests that ordinary community supervision *is* punishment."). For purposes of this risk factor, "punishment" is not limited to imprisonment. *See In re Commitment of Gomez*, 535 S.W.3d 917, 922 & n.11 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) (reoffending while on probation and in court-ordered sex-offender treatment is a risk factor with "significantly higher levels of sexual recidivism"). According to Thorne, this risk factor examines only whether a person was punished in "some way."

---

[7]We note that Thorne testified that Born is part of a small but extremely dangerous group of sexually violent offenders who suffer from an abnormality.

Additionally, the record reflects that Born knew that if he reoffended while on probation, he would face consequences. We note that Born admitted that his second conviction resulted from behavior that he knew at the time was wrong. He further confirmed that he sexually assaulted his second victim while undergoing court-ordered sex-offender treatment. And Born ignores evidence showing that while he was on probation for his first offense, he was given a set of rules that he had to follow or face consequences. While probation may not have felt like a burden to Born, he felt the effects of the probation, and yet he still reoffended. The "persistence after punishment" risk factor is therefore applicable to Born.

Born next argues that it is "significant" that the PCL-R test did not show him to be a psychopath. Born does not expound upon this statement with argument or citation to authority. However, Born's test result does not seem particularly significant since according to Thorne, most pedophiles are not psychopaths. Moreover, as Thorne testified, this test was not designed to determine whether a person will reoffend. Finally, Thorne stated that although Born's low score did not indicate that he is a psychopath, Born possesses some psychopathic traits such as a lack of empathy and remorse.

Born also points to the fact that he completed the sex-offender-treatment program offered in prison as support for his legal sufficiency argument. Again, Born neglects to support this conclusory statement with argument or citation to authority. However, it should be noted that although Born completed the program, he missed

more than half of his classes during the third phase of his treatment. Although this does not appear to be Born's fault, the result is that Born was deprived of half of the classes in which the general information he learned would have been applied to his specific offense history. According to Thorne, Born's treatment provider still has concerns about Born's lack of empathy and his possible sadistic tendencies.

Finally, Born argues that the parole panel's belief that he "is able and willing to fulfill the obligations of a law-abiding citizen" and that his release on parole is in the "best interest of society" should have some bearing on this court's legal sufficiency analysis. We disagree. A belief by the parole board is not the functional equivalent of a finding that a person is not likely to "engage in a predatory act of sexual violence." *See In re Commitment of Evers*, 420 S.W.3d 81, 89 (Tex. App.—Beaumont 2012, pet. denied) (op. on reh'g). The *Evers* Court based its holding on Texas Government Code Section 508.141(e)(2) which requires the Board to make certain findings but makes no reference to a behavioral abnormality. *Id.* at 88. We agree with the *Evers* court statement that "[c]ivil commitment and parole are separate processes with separate purposes." *Id.* Accordingly, the Board's decision has no bearing on this court's review of this issue.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Born is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The evidence is legally sufficient

18

to support the jury's finding that Born is a sexually violent predator. Accordingly, we overrule Born's first issue.

## B.    Factual sufficiency

Born also argues that the evidence is factually insufficient to support the jury's finding. We disagree. When reviewing the factual sufficiency of the evidence to support the civil-commitment order, we weigh all of the evidence in a neutral light to determine whether the jury's finding "is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; . . . shocks the conscience; or clearly demonstrates bias." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Wise v. SR Dall., LLC*, 436 S.W.3d 402, 408 (Tex. App.—Dallas 2014, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)). We reverse only if, after weighing the evidence in a neutral light, we determine that the risk of an injustice remains too great to allow the verdict to stand. *Pool*, 715 S.W.2d at 635; *Wise*, 436 S.W.3d at 408. "In conducting our review, we may not substitute our judgment for that of the jury[,] which is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *In re Commitment of Renshaw*, 598 S.W.3d 303, 307 (Tex. App.—Texarkana 2020, no pet.).

In support of his factual insufficiency challenge, Born argues, "[f]or the reasons set out in issue one," the evidence does not support a finding that he is an "extremely

dangerous" or "worst of the worst" sex offender.[8]  As stated above, these terms are not included in the statutory definition of "sexually violent predator."  *See* Tex. Health & Safety Code Ann. § 841.003(a).  Consequently, the State was not required to prove that Born was an extremely dangerous or worst-of-the-worst sex offender.  *Johnson*, 2019 WL 364475, at *3; *see Bohannan*, 388 S.W.3d at 302–03.

Born also relies on our recent opinion in *Stoddard* as a basis to argue that the evidence is factually insufficient to support the jury's finding that he suffers from a behavioral abnormality.  *See In re Commitment of Stoddard*, 601 S.W.3d 879 (Tex. App.—Fort Worth 2019, pet. granted) (mem. op. on reh'g).  Without citation to the record, Born claims that, as in *Stoddard*, the jury's verdict was "based upon not much more than the facts related to the underlying crime[s] for which [Mr. Born] was convicted" and "his other unadjudicated offenses making the risk too great that the jury's ultimate verdict was meant to inflict more punishment on Mr. Born."  We disagree.

Moreover, in *Stoddard* our concern was that "the evidence . . . focused almost entirely on Stoddard's commission of the . . . offenses for which he ha[d] already

---

[8]In further support of this issue, Born argues that the jury's verdict relied on improperly admitted evidence.  Specifically, Born claims that the jury relied on "speculative hearsay evidence" and "irrelevant hearsay evidence."  However, as discussed in response to Born's fifth and sixth issues, the complained-of testimony was not speculative or irrelevant.  *See infra* Parts V, VI.  Moreover, the factual sufficiency standard of review requires us to consider all evidence, including improperly admitted evidence.  *Cabot Capital Corp. v. USDR, Inc.*, 346 S.W.3d 634, 638–39 (Tex. App.—El Paso 2009, pet. denied).

served his sentence and ha[d] become eligible for parole under the terms of the law."

*Id.* at 893. We found these circumstances a concern because

> [p]ermitting the State to extend a sex offender's confinement indefinitely based upon not much more than the facts related to the underlying crime for which he was convicted allows a factfinder to succumb to the temptation to lock up sex offenders and throw away the key. It would allow juries to do in civil cases that which cannot be done in criminal cases—punish twice for the same conduct.

*Id.*

This case is far removed from *Stoddard* and does not present any of the concerns that we had in that case. First, we note that the jury heard evidence of Born's history of sexual abuse against young boys. The jury learned that Born repetitively sexually assaulted his five-year-old stepson *after* he had been punished for the repeated sexual assault of another little boy. In fact, the jury heard Born admit that his second conviction resulted from behavior that he knew at the time was wrong—and that occurred after he had already undergone two and a half years of sex-offender treatment. Moreover, through Thorne's testimony, the jury was aware that reoffending after punishment is the number one indicator that a person will reoffend again. Finally, the jury heard Born's testimony in which he stated

- his triggers are alcohol, pornography, and children;

- he was sexually attracted to young boys when he sexually assaulted his two victims;

- he has a disease that can never be cured;

- he will always need sex-offender treatment in order to ensure that he does not hurt anyone else again; and

- there is always a risk that he will sexually assault another child in the future.

Stoddard's offenses, in contrast to Born's, arose from the same time period. *Id.* at 893–94. Moreover, unlike in this case, there was no evidence that Stoddard reoffended after being punished. *Id.*

Born also points to his score of 15 on the PCL-R test, which is lower than Stoddard's score of 27. It is true that Born's score was lower than Stoddard's. However, "a person's psychopathy is not a requisite finding that must be made in support of his commitment as a sexually violent predator." *In re Commitment of Hebert*, 578 S.W.3d 154, 159 (Tex. App.—Tyler 2019, no pet.). Moreover, Thorne testified that Born was a pedophile and that most pedophiles are not psychopaths. Thorne stated that he had expected Born to obtain a low score on this test.

Viewed in a neutral light, the evidence is factually sufficient to establish that Born has a condition causing a predisposition toward violent conduct—that is, Born has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Bohannan*, 388 S.W.3d at 302 ("The required condition is the predisposition."). There was proof that Born committed two serious sex offenses (the second while he was receiving court-ordered sex-offender treatment and was under the supervision of the State for a prior sex offense) and that he had a panoply

of risk factors for reoffending. *See In re Commitment of Metcalf*, 602 S.W.3d 609, 623–24 (Tex. App.—Texarkana 2020, pet. denied) (considering similar factors in holding the evidence factually sufficient to support commitment). Moreover, the State's expert, Thorne, diagnosed Born with pedophilic disorder, a condition in which an adult has an attraction to prepubescent children. This chronic condition causes Born to have serious difficulty controlling his behavior. *Id.* at 613–14 (stating that serious difficulty controlling behavior can be inferred from an individual's past behavior, his own testimony, and an expert's testimony).

The contrary evidence—including the proof that Born is not a psychopath—did not give rise to a risk of injustice too great to allow the verdict to stand. *Cf. Stoddard*, 601 S.W.3d at 898; *Short*, 521 S.W.3d at 911. We therefore hold the evidence factually sufficient and overrule Born's second issue.

## IV. DEFINITION OF BEHAVIORAL ABNORMALITY

In his third issue, Born again argues that Thorne failed to use the proper definition of the term "behavioral abnormality."[9] Because we held that Thorne used

---

[9]As to this issue, Born neglects to provide any argument regarding his assertion that Thorne did not rely on the proper definition of the term "behavioral abnormality." Nor does Born cite any legal authority for his claim. However, because appellate briefs are to be construed liberally so that the right to appellate review is not lost by waiver, we will address the merits of this issue. *See El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 316 (Tex. 1999); *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997) (directing appellate courts to reach merits of an appeal whenever reasonably possible). From Born's legal sufficiency issue, we can discern his argument regarding the definition of behavioral abnormality.

the correct definition of the term "behavioral abnormality" when we reviewed Born's legal sufficiency issue, we need not further address this issue. We overrule Born's third issue.

## V. COMMENT ON WEIGHT OF THE EVIDENCE

In his fourth issue, Born claims that the trial court commented on the weight of the evidence during the State's redirect examination of Thorne and during the defense's recross-examination of Thorne.

Q. (By Ms. Hickman) You were asked on direct examination about the Static; is that right?

A. Yes, ma'am.

Q. And we went through line by line on the Static?

A. Yes, ma'am.

Q. So you scored Mr. Born as getting no points for being in a two-year relationship; is that right?

A. Correct.

Q. Was Mr. Born, in fact, offending against children in both of those relationships?

A. Yes, ma'am.

Q. Does that mitigate that score in your mind?

A. Yeah. That's why I think I used the term two times, theoretically something is a protective factor, but for Mr. Born, having a job, being in a relationship for two years, those did not—even though research suggests they can, those did not serve as protective factors for him.

Q. And so you also scored Mr. Born with having a 1 for having prior like convictions and offenses; is that right?

A. Yes, ma'am.

Q. And is that because Mr. Born is only charged with one conviction after the offense against [first victim]? He only has one conviction for [second victim]?

A. Correct.

Q. So the fact that Mr. Born has admitted to offending against [second victim] 40 times is not scored on that Static?

A. That is not taken into consideration.

Q. And if the score could go like 40 times that he did it to [second victim], it would be a lot higher?

A. Yeah. He was given a conviction for every time, you know, but . . .

Q. And the fact that Mr. Born has admitted to offending against [first victim] at least three times, that also is not factored into that?

A. Correct.

Q. And this isn't speculation. This is what Mr. Born has admitted to doing, correct?

A. Correct.

Q. And there's other limitations of the Static; is that right?

A. Sure.

Q. Does the Static have a way to address the fact that Mr. Born groomed his victims?

A. It does not.

Q.  Does it have a way to address that Mr. Born used physical force with his victims?

A.  It does not.

Q.  Does it have a way to address the fact that Mr. Born quibbles about whether or not he's attracted to children?

A.  It does not.

Q.  Does it have a way to address the fact that Mr. Born admits he needs more treatment?

A.  It does not.

Q.  And it does not have a way to address denial or minimization?

A.  It does not.

THE COURT:  *It sounds like this—this—doesn't sound like it's a very comprehensive Static.  It leaves out a lot of categories.*

MS. HICKMAN:  That's our argument—

MS. JASEMI-ZARGANI:  Objection, Counsel is testifying—

MS. HICKMAN:  —Your Honor.

MS. JASEMI-ZARGANI:  They can't make an argument in the middle of trial.

THE COURT:  I understand, but it's something they're using for their evidence, something that's probably not—

MS. JASEMI-ZARGANI:  Your Honor, then I can make the argument here that why would the expert use such an instrument—

THE COURT:  That's exactly the point I was trying to make, so . . .

MS. JASEMI-ZARGANI:  —the most relied on.

THE COURT: That's—okay. I mean, it cuts both ways. I understand.

Born also takes issue with the following exchange:

RECROSS-EXAMINATION BY MS. JASEMI-ZARGANI:

Q. Just a few questions.

Dr. Thorne, isn't it true that the Static-99R is the well—most researched instrument in the field of sexual recidivism created by the top researchers in the field of sexual recidivism; is that correct?

A. Yeah, I wouldn't disagree.

THE COURT: You said researched, or you meant used?

MS. JASEMI-ZARGANI: Pardon? Top researchers in the field—

THE COURT: I understand. You said, "most researched." Did you mean that it was the most applied or used?

MS. JASEMI-ZARGANI: No. Most researched and—

THE COURT: I apologize. Thank you, Counsel.

Q. (By Ms. Jasemi-Zargani) And the Static 99-R has a number of strengths, and it's used as risk factors that have been periodically shown to be associated with sexual recidivism; is that correct?

A. Sure, wouldn't disagree.

Q. So then you would agree that it's not just a useless test; is that correct?

A. I don't think I've described it as useless, no, ma'am.

Born failed to object to these remarks as a comment on the weight of the evidence.

In order to preserve an issue for appellate review, a timely objection must be made in the trial court. Tex. R. App. P. 33.1(a)(1). Comments on the weight of the

evidence are not an exception to this rule, unless the comment is of such a nature that it cannot be cured with a proper instruction. *Dow Chem. Co.,* 46 S.W.3d at 240. Unwaivable error must be of the type that "cannot be cured" and therefore needs no objection. *See Capellen v. Capellen,* 888 S.W.2d 539, 547 (Tex. App.—El Paso 1994, writ denied). The claimant bears the burden to "explain how any comments made by the trial judge were incurable or would excuse" the claimant's "failure to preserve error." *Dow Chem. Co.,* 46 S.W.3d at 241.

Born notes only that the trial court "improperly conveyed its views on the merits of one of the most crucial aspects of the defense case and that this commentary was harmful especially with the jury being split 7–5 at one point during its deliberations before the trial court submitted a coercive supplemental charge." Born does not present any argument, nor has he shown, that a proper instruction, such as an instruction to disregard, could not have rendered the trial court's remarks harmless. Accordingly, we hold Born has not demonstrated that the trial judge's alleged improper comments were incurable. *See id.*

Even if Born had argued that the trial court's comments were incurable and excused his failure to preserve error, we would hold that an instruction from the judge would have cured any possible error. The trial court's first comment stating the test does not sound "like it's a very comprehensive Static. It leaves out a lot of categories" benefitted Born. The trial court's statement was a negative comment about the test that Thorne used as part of his clinically adjusted actuarial approach to conclude that

28

Born suffered from a behavioral abnormality. The trial court's statement that the test was not comprehensive bolstered Born's argument during closing that the test was not a good indicator that Born would reoffend again. As to the trial court's second statement, the trial court sought to clarify whether the Static test was the most used or most researched tool. The trial court then apologized for the interruption and the trial continued. The trial court's question was a permissible attempt to clarify defense counsel's question. *See Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978); *Ash v. State*, 420 S.W.2d 703, 705 (Tex. Crim. App. 1967) (holding trial court permitted to question witness when seeking information to clarify a point).

We overrule Born's fourth issue.

## VI.   EVIDENTIARY RULINGS

In his fifth issue, Born claims that the trial court erred by admitting testimony based on speculation.[10] In his sixth and final issue, Born claims that the trial court

---

[10]To the extent that Born asserts that the trial court erred in admitting hearsay regarding the testimony referenced in issue five, he has failed to preserve such an argument. When a complaint on appeal does not match the objection made in the trial court, no error is preserved. *See Benson v. Chalk*, 536 S.W.3d 886, 895–96 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). At trial, Born argued that Thorne's testimony regarding Born's purpose in driving around aimlessly was speculative. Born failed to object to this testimony on the ground of inadmissible hearsay. Accordingly, he has not preserved an argument that the testimony was inadmissible hearsay. *See* Tex. R. App. P. 33.1(a).

erred by admitting irrelevant hearsay evidence when it allowed testimony of his suspected membership in a white supremacist gang.

### A.    Standard of review and applicable law

Evidentiary rulings are committed to the trial court's sound discretion. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (op. on reh'g); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). When reviewing a trial court's ruling on admissibility of evidence, we must uphold the trial court's decision absent an abuse of discretion. *See City of Brownsville*, 897 S.W.2d at 753; *McLellan v. Benson*, 877 S.W.2d 454, 458 (Tex. App.—Houston [1st Dist.] 1994, no writ) (op. on reh'g). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *See* Tex. R. App. P. 44.1(a)(1); *City of Brownsville*, 897 S.W.2d at 754. Even if a trial court abuses its discretion and improperly admits evidence, reversal is warranted only if the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). To preserve error for appellate review, the complaining party must timely and specifically object to the evidence and obtain a ruling. *See* Tex. R. App. 33.1(a).

Testimony is speculative if it is based on guesswork or conjecture. *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012). Testimony based on speculation is considered "incompetent evidence" and therefore cannot be used to support a judgment. *Gen. Motors v. Iracheta*, 161 S.W.3d 462, 470–71 (Tex. 2005).

30

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and if the fact is of consequence in determining the action. Tex. R. Evid. 401.

## B. The testimony was not speculative.

Thorne testified that Born's pedophilic disorder caused him serious difficulty controlling his behavior. The State then asked Thorne if he saw any other indications that suggested Born had serious difficulty controlling his behavior. The following exchange occurred:

> Q. Is it an indication that it caused him to have serious difficulty controlling his behavior the fact that he offended, or is there other indications?
>
> A. Well, I mean, there's other things in records that come up. Again, there's one indication in the record that he engaged in aimless driving where you might drive around kind of wanting to see if you could find a victim.
>
> MS. JASEMI-ZARGANI: Objection, speculation.
>
> MS. HICKMAN: Mr. Born stated that, Your Honor, in the records.
>
> MS. JASEMI-ZARGANI: Driving to find a victim was stated in the record?
>
> MS. HICKMAN: He stated that—in the records, he stated aimless driving.
>
> MS. JASEMI-ZARGANI: Aimless driving, I'm objecting as to the statement of—
>
> THE COURT: Are you repeating what the Defendant indicated to you?

31

(Multiple people speaking)

THE WITNESS: I was trying to describe what aimless driving was, because it's not a very commonly used term.

THE COURT: Okay. So what's the objection?

MS. JASEMI-ZARGANI: The objection is the speculating about aimless driving—

THE COURT: He's not speculating. He seems to—

MS. JASEMI-ZARGANI: —looking for victims part of it.

THE COURT: He seems to be an expert to indicate what he feels is aimless driving.

Is it aimless driving?

THE WITNESS: Aimless, A-I-M-L-E-S-S driving.

THE COURT: I'm overruling your objection.

Born argues that Thorne's testimony stating that he drove around aimlessly for the purpose of finding a victim was speculative and probably caused the rendition of an improper judgment. We disagree.

Thorne testified that one of the records he reviewed as part of his evaluation reflected that Born drove around "aimlessly." Accordingly, Thorne's testimony that Born drove around aimlessly is not speculation: it was not a guess or conjecture; it was based on a record that Thorne read in preparation for his evaluation of Born. *Nat. Gas Pipeline Co. of Am.*, 397 S.W.3d at 156.

Additionally Thorne's testimony, that "aimless driving" could indicate that Born was attempting to find another victim, was based on his expertise as a licensed psychologist who practices primarily in the area of forensic psychology and has performed these types of civil-commitment evaluations for approximately thirteen years. Thorne testified that he was attempting to describe the term "aimless driving" because it is not a very commonly used term. Moreover, in response to Born's objection, the trial court stated that Thorne was testifying in his capacity as an expert. And it should be noted that Born failed to object to Thorne's expertise to offer this opinion.

Thorne's opinion that Born's aimless driving could indicate that he was attempting to find another victim was not guesswork or conjecture. His opinion was based on a record that Thorne reviewed as well as his expertise as a licensed psychologist. Accordingly, we overrule Born's fifth issue.

### C. The evidence of Born's gang membership was relevant.

In his sixth and final issue, Born claims that the trial court erred by admitting irrelevant hearsay evidence when it allowed testimony of his suspected membership in a white supremacist gang. During Thorne's testimony, the State asked if Born was a member of a prison gang. Born did not object to the State's question, and Thorne responded that Born was suspected of being a gang member. Born failed to preserve this issue for review. *See* Tex. R. App. P. 33.1(a)(1) (holding in order to preserve an issue for appellate review, an appellant must make a timely objection in trial court).

33

The State then asked Thorne to identify the particular gang Born was suspected of joining. Born objected to relevance, but the trial court overruled the objection.[11] This objection was timely; thus, the admission of this particular response was preserved for appellate review. *See id.*

The admission of Born's possible membership in a white supremacist gang was relevant to Thorne's evaluation. Thorne stated that he uses a clinically adjusted actuarial approach to determine if a subject suffers from a behavioral abnormality. As a part of this methodology, Thorne reviews an individual's criminal history. Evidence of gang membership is relevant to a person's criminal history and thus, relevant to a determination of whether a person suffers from a behavioral abnormality. *See In re Commitment of Robertson*, No. 09-09-00307-CV, 2010 WL 3518509, at *4 (Tex. App.— Beaumont Sept. 9, 2010, pet. denied) (mem. op.) (being a gang member was important to a psychiatrist's valuation of whether a person suffers from a behavioral abnormality). Accordingly, we overrule Born's sixth issue.

---

[11] To the extent that Born is arguing on appeal that the objected-to testimony is inadmissible hearsay, he failed to preserve error on this ground. Born's only objection at trial was relevance. A relevancy objection does not preserve a hearsay complaint on appeal. *See Dalworth Trucking Co. v. Bulen*, 924 S.W.2d 728, 736 (Tex. App.—Texarkana 1996, no writ). Accordingly, Born has not preserved an argument that the testimony was inadmissible hearsay. *See* Tex. R. App. P. 33.1(a).

## VII. Conclusion

Having overruled Born's six issues, we affirm the trial court's judgment of the civil commitment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  November 19, 2020